UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF
OKLAHOMA

(1)     JEFF TREVILLION, as Special Administrator for the Estate of Louis Perales, deceased,

  Plaintiff,

v.

(2)  SCOTT OWEN, in his official capacity as Sheriff Washington County, Okla.; and
(3)  JAMES WATHEN, III,
(4)  SONIA BRETON,
(5)  JOSHUA DURHAM,
(6)  ANDREW GALANIS,
(7)  DAVID KERR,
(8)  ETHAN DONOVAN,
(9)  JORDAN INMAN,
(10) MICHAEL HOPPER,
(11) MICHAEL KITCHENS,
(12) RANDY MORGAN,
(13) SETH O'NEAL,
(14) AARON WITT,
(15) BRANDI UNDERWOOD,
(16) COLTON TATTERSHALL,
(17) JOSEPH RAMERIZ, and
(18) REED BLACKARD,
   all in their individual capacities

Defendants.

Case No.: 22-cv-00473-JAR-MTS

**OPINION AND ORDER**

Jane A. Restani, Judge[*]:

Jeff Trevillion, as Special Administrator for the Estate of Louis Perales, deceased, ("the Estate") filed a 42 U.S.C. § 1983 claim for cruel and unusual punishment in violation of Perales's Eighth and Fourteenth Amendment rights. The Estate brings this claim against the arresting officer, the jail staff, and Sheriff Scott Owen in his official capacity. Compl. at 1. Pending before the court are two motions to dismiss filed by Sheriff Owen and Washington County Jail's nurse, Sonia Breton. See Owen's Mot. Dismiss, ECF No. 15 (Dec. 30, 2022) ("Owen's Br."); Breton's Mot. Dismiss, ECF No. 19 (Jan. 9, 2023) ("Breton's Br.").

The court denies the former and grants the latter motion, dismissing the claims against Sonia Breton without prejudice. In addition, limited pre-answer discovery is permitted.

I.  **Factual Background**

As this is a motion to dismiss, the facts alleged in the complaint are taken as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Estate alleges as follows:

Louis Perales suffered from hyperlipidemia, hypertension, diabetes, degenerative disc disease, GERD, bipolar disorder, ADHD, and anxiety. Compl. at ¶ 39. The Estate asserts that he also suffered from a substance use disorder. Id. at ¶ 38.

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

In the afternoon of November 3, police officer James Wathen responded to a report of a naked adult male "having a mental episode." Compl. at ¶ 24. Wathen arrived to find Louis Perales naked and covered in urine in a bathroom that was covered in human feces. Id. at ¶ 25. Perales was waving his arms and talking incoherently, only occasionally making sense, and was unable to keep still. Id. at ¶ 28. Wathen believed that Perales was suffering from acute methamphetamine intoxication. Id. at ¶ 29. Wathen also noticed blood pressure medication in Perales's room. Id. at ¶ 27. Wathen then waited with Perales for Emergency Medical Services ("EMS") to arrive. Id. at ¶ 32. Emergency medical technicians performed an on-scene medical assessment and determined that Perales was "clear of any immediate medical issues." Id. at ¶ 33.[1] Wathen then placed Perales under arrest and brought him to the Washington County Jail. Id.

According to the complaint, "upon information and belief," Washington County Jail diverts intoxicated persons from the booking process, denying them medical assessment and treatment until they "sober up." Id. at ¶ 14. The municipality has not clearly stated that this is not the practice. See Owen's Br. at 9.

The Estate alleges that Washington County Jail has had at least two incidents of death in the past four years related to intoxication. In 2018, a man was put in a holding cell until he was "sober enough for booking," receiving no medical clearance or assessment by medical personnel. Compl. at ¶ 21. He was found dead

---

[1] The Estate alleges that the on-scene assessment by the EMTs was "limited in scope" and did not include a risk evaluation for substance use disorder or withdrawal symptoms. Compl. at ¶ 34.

3

a few hours later.  Id.  In 2019, the jail again admitted a person without medical clearance or assessment and placed him in a holding cell until "sober enough for booking."  Id. at ¶ 22.  The jail staff left him to languish and convulse in the cell without intervention for more than 24 hours, and after eventually being transferred to a hospital, the inmate died.  Id.

At the Washington County Jail, Perales demonstrated obvious and observable physical manifestations consistent with withdrawal and immediate risk of serious harm, including being physically unable to sign his bond sheet "because of hi[s] f[l]ailing arms."  Id. at ¶ 40.  Upon the Estate's information and belief, Wathen communicated his on-scene observations to jailers and Nurse Breton, regarding Perales's mental and physical condition and behavior, including his belief that Perales was suffering from acute methamphetamine intoxication.  Id. at ¶ 41.  The Estate alleges that Wathen may have also included information about Perales's hypertension.  Id. at ¶ 42.  Prior to his November 3, 2020, arrest, Perales had been held at the Washington County Jail twelve times, spanning from August 3, 2013, to May 17, 2020.  Id. at ¶ 37.  His April 25, 2016, detention lasted 92 days.  Id. at ¶ 60.  The Estate alleges that the Washington County Jail had knowledge of Perales's hypertension and possible other diseases based on his prior detentions, noting that his 2016 stay occurred two years after Perales was diagnosed with hypertension.  Id. at ¶¶ 60–61.

Perales was denied a medical assessment and placed in a holding cell.  Id. at ¶ 46.  Perales continued experiencing symptoms associated with withdrawal and

4

exhibited signs of cardiac distress. Id. at ¶ 49. The next morning at 10:52 am, Joshua Durham, a jailer, id. at ¶ 4, observed that Perales was "no longer making any noises after approximately 1 min 45 seconds," id. at ¶ 51. By the time Durham responded, Perales was found "with a liquid substance around his head." Id. at ¶ 56. When Breton responded, she assessed Perales and attempted life saving measures. Id. at ¶ 57. EMS was called at 10:59 am. Id. at ¶ 58.

Perales was brought to Jane Phillips Hospital and was pronounced dead. Id. at ¶ 62. The medical examiner determined that Perales's death was caused by atherosclerotic cardiovascular disease, exacerbated by methamphetamine. Id. at ¶ 62.

## II. Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). While "threadbare recitals of a cause of action's elements" are not enough, Twombly, 550 U.S. at 663, "specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555) (quotation marks omitted)). When

5

considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. Ind. Pub. Ret. Sys. v. Pluralsight, Inc., 45 F.4th 1236, 1247 (10th Cir. 2022).

### III. Discussion

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." Garcia v. Salt Lake Cnty., 768 F.2d 303, 307 (10th Cir. 1985) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "The Fourteenth Amendment's due-process clause provides pretrial detainees the same protection for medical attention as convicted inmates receive under the Eighth Amendment." George ex rel. Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners, 32 F.4th 1246, 1255–56 (10th Cir. 2022) (citation omitted).

#### A. Sheriff Owen's Motion to Dismiss

The complaint sets forth three separate theories of constitutional liability against Owen in his official capacity as Sheriff of Washington County. The Estate claims that Owen, as final policymaker, instituted a policy of medical deliberate indifference, and that he was responsible for training and supervision at Washington County Jail that resulted in deliberate indifference to harm. Compl. at ¶¶ 65–67, 72–79.

By suing an individual in his or her official capacity, the Estate brings a claim for municipal liability. See Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir.

6

2010). To establish municipal liability, a plaintiff must show the existence of a municipal custom or policy that caused the plaintiff to suffer a constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). "[T]he combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." Crowson v. Washington Cnty. Utah, 983 F.3d 1166, 1186 (10th Cir. 2020) (quoting Garcia, 768 F.2d at 310).

A municipal policy or custom can take many forms, such as formal regulations or policy statements, informal custom "amounting to a widespread practice. . . so permanent and well settled as to constitute a custom or usage with the force of law," or the ratification by such final policymakers of decisions of subordinates to whom authority was delegated subject to such policymakers' review and approval. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

Municipal liability can also be established by municipal policies or customs that result in failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. Id. Deliberate indifference in the municipal liability context requires that the violation of a person's constitutional rights be "the plainly obvious consequence" of a given policy, see Brown, 520 U.S. at 411, or that the violation be "highly likely" to be inflicted with a likelihood of recurrence. Id. at 412. Deliberate indifference of a municipality is therefore "premised on obviousness or constructive notice" of

7

violations and is based on an "objective" standard. Farmer v. Brennan, 511 U.S. 825, 841 (1994).

Owen moves to dismiss arguing that the Estate has failed to allege sufficient facts for a plausible claim of a constitutional violation. Owen's Br. at 3–4. Owen asserts first, that there is insufficient evidence to support a violation of Perales's Eighth Amendment rights; second, that the "sober up" policy or custom does not constitute evidence of deliberate indifference; and finally, that there is no causal link between failure to adopt policies to mitigate withdrawal symptoms and Perales's death. Owen's Br. at 8–9.

1. **Owen's Liability for Municipal Policy**

    a. **Municipal Liability is Evaluated With Objective Standards**

Owen specifically contends that delayed medical care involves "both an objective and subjective component, such that [the Court] must determine both whether the deprivation is sufficiently serious and whether the government official acted with a sufficiently culpable state of mind." Owen's Br. at 4–5 (citing Oxendine v. R.G. Kaplan, M.D., 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation marks and citation omitted)). It is this subjective prong of state of mind that Owen asserts that the Estate fails to allege.

Owen is incorrect that assessment of a municipal policy must utilize subjective standards. When a plaintiff seeks to hold a municipality at fault for a claim that a policy encourages medical deliberate indifference, the Tenth Circuit applies an objective standard for municipal liability. Compare George, 32 F.4th

1253, with Strain v. Regalado, 977 F.3d 984, 990–993 (10th Cir. 2020). For example, in George, the Tenth Circuit applied the objective municipal liability standard of deliberate indifference to a failure-to-train claim stemming from a jail-suicide.[2] 32 F.4th at 1253, 1258, n.3. It is only in cases in which the violation stems from the individual actions of jail personnel that the subjective medical indifference prong must be met to hold a municipality accountable. See Strain v. Regalado, 977 F.3d at 990–993 (apply the Eighth Amendment subjective standard to the defendants as the claims were limited to deliberate indifference of medical needs by jailers, and holding that the subjective element is necessary when the claim arises out of individual inaction, regardless of whether the municipality is a defendant).

### b. Sufficient Facts Are Alleged to Show a Delay in Medical Screening Plausibly Caused Perales's Death

Owen next contends that there are insufficient facts alleged to show that the "sober up" policy caused Perales's death. Owen's Br. at 9. Owen argues that the Estate interchangeably refers to Perales as either intoxicated or suffering withdrawal, and notes that Perales's cause of death was found to be cardiovascular disease exacerbated by methamphetamines. Def. Scott Owen's Mtn. Dismiss and Br. at 8, ECF. No. 23 (Feb. 3, 2023) ("Owen's Reply Br."). Owen also asserts that the Estate's allegations are purely conclusory and do not meet the standard necessary to survive a 12(b)(6) motion. Id.

---

[2] The Tenth Circuit treats all jail-suicide claims as failures to provide some level of medical care. George, 32 F.4th at 1250.

Here, the Estate asserts that Perales suffered from many different diseases, including hyperlipidemia, hypertension, and diabetes.  Compl. at ¶ 39.  The Estate asserts Perales had been held at Washington County Jail on twelve previous occasions, that one of these occasions lasted over three months, and that Perales had been diagnosed with hypertension before that long stay.  Id. at ¶¶ 37; 60.  According to the complaint, Perales was brought to the Washington County Jail in the early afternoon on November 3, where, despite incoherent speech and "f[l]ailing arms," he was denied a medical assessment, and his existing records were never accessed.  Id. at ¶¶ 40; 46.  Perales also started exhibiting signs of cardiac distress.  Id. at ¶ 49.  The records show that Durham observed Perales "no longer making any noises after approximately 1 min 45 seconds." Id. at ¶ 51.  What is not clear is how often Perales was observed and how long he was making noises before this pause, or what kind of noises they were.  Only after this, late in the morning on November 4, did Perales receive medical attention.  Id. at ¶ 58.  By then, Perales was found unconscious with a liquid substance around his head, and within hours, Perales died of atherosclerotic cardiovascular disease.  Id. at ¶ 56.  If proven, these facts are sufficient such that a jury could conclude that had Perales been screened and had the jail's medical records been accessed, essentially, if he had not been subject to the "sober up" policy, Perales's current state and medical conditions would have led a reasonable person to believe that Perales required life-saving medical attention much sooner than he received it.  Causation, for the purposes of surviving a Rule 12(b)(6) motion, is satisfied.

### c. The Estate Properly Alleges that Owen Had Notice that a Deprivation of Constitutional Rights was "Highly Likely" to Recur

Owen asserts that even if the Estate need not demonstrate the subjective standard of medical deliberate indifference, the complaint still fails to state a plausible claim that municipal policy resulted in deprivation of constitutional rights. Owen's Br. at 8. Owen argues that the policy of diverting intoxicated persons from the booking process and preventing medical screening until such persons have "sobered up" is not itself unconstitutional. Owen's Br. at 9 (citing Johnson v. Davis Cnty., No. 1:18-CV-00080-DBB, 2021 WL 615325 (D. Utah Feb. 17, 2021) ("Johnson I"), aff'd No. 21-4030, 2022 WL 830202 (10th Cir. March 21, 2022) (non-precedential) ("Johnson II")). In Johnson I, the district court determined that a violation of national best practices did not meet the municipal "deliberate indifference" standard. 2021 WL 615325, at *14. A panel of the Tenth Circuit, in a non-precedential opinion, did not endorse the district court's reasoning on this point and instead determined that deliberate indifference could not be established due to a lack of prior similar constitutional violations. See Johnson II, No. 21-4030, 2022 WL 830202 at *4.[3]

---

[3] In any case, the facts of this matter distinguish it from the district court's understanding of Johnson's claim. First, Davis County had policies that applied extra care to intoxicated inmates, specifically, "[i]nmates displaying signs of drug, alcohol abuse or withdrawal should not be accepted until they have been seen and cleared by a physician," the opposite of the policy described by the Washington County Jail. Johnson I, 2021 WL 615325 at *4; Owen's Br. at 9. Second, the jailers in Johnson were not fully aware of the inmate's (Hayes's) drug usage, as Hayes admitted to taking only one of the three medications that led to his death, whereas here, Officer Wathen alerted the Washington County Jail that it was likely Perales was abusing methamphetamine. Johnson I, 2021 WL 615325, at *7; Compl. at ¶¶ 29; 41. Third, Hayes's outward signs of intoxication were less significant than those alleged by the Estate. Hayes had slurred speech but was able to answer questions and have a brief discussion at the time of his booking, despite needing help to put his

11

While the Estate attempts to bolster its position that the policy of the Washington County Jail constitutes deliberate indifference by comparing the "sober up" policy with best practice materials from the Department of Justice, Compl. at ¶¶ 8–13, that is not the only basis on which the Estate attempts to establish the unconstitutionality of the policy. Rather, the Estate's argument focuses on Owen's deliberate indifference. Pl. Resp. to Owen at 8–10. The Estate contends that Owen's deliberate indifference can be established in this case by showing that the lack of medical screening created a "highly predictable" and "plainly obvious" consequence of denying medical care in violation of the Eighth Amendment. Id. at 8–10 (citing Barney v. Pulsipher, 143 F.3d 1299, 1307–08 (10th Cir. 1998). The Estate argues that two prior deaths at Washington County Jail were caused by the "sober up" policy. Id. at 8. These deaths, the Estate asserts, provided Owen with notice. Id. at 7–8. The Estate contends that Owen adopted the "sober up" policy "knowing it would cause serious bodily injury or death," which would satisfy the deliberate indifference needed for a municipal liability claim. Id. at 10.

In his reply brief, Owen asserts that only one of these deaths was related to intoxication or withdrawal, Owen's Reply Br. at 8, and that "one or even two incidents in the years prior to decedent's incarceration are insufficient to demonstrate that a constitutional violation is a 'highly predictable,' or 'plainly

---

hands on the counter. Johnson I, at *2, *7. The court there noted that Hayes did not have the level of intoxication that would apply further safety policies that are triggered when inmates "are incoherent." Johnson I, 2021 WL 615325 at *11. Here, according to the facts alleged, Perales was found naked and covered in his own urine, unable to control his arms which were "waiving," unable to keep still, and "talking incoherently with only small bursts of coherency." Compl. at ¶ 28. The two states of intoxication are not comparable.

obvious,' consequence of municipal policy," id. at 6. Whether these deaths were caused by the policy is a factual matter, not a matter for a Rule 12(b)(6) motion. All that is relevant here is that the allegation has facial plausibility and gives the defendant fair notice of the claim. See Ashcroft, 556 U.S. at 678; Khalik, 671 F.3d at 1192. As the two "incidents," as alleged, were not merely medical complications but deaths resulting from a lack of medical screening, the court concludes that the facts sufficiently allege that Owen was aware that there were serious risks with significant consequences to continuing the "sober up" policy. Unlike Johnson, in which plaintiffs established no prior deaths and the defendant jail did have a policy of medical screening, here there was at least one, possibly two deaths relating to a policy which denied such screening. See Johnson II, 2022 WL 830202 at *4–5; Compl. at ¶¶ 20–22. Taking all allegations as true, such incidents would meet the "highly predictable" standard for municipal deliberate indifference.

      The Estate contends that Perales' death was caused by denial of medical treatment resulting from Washington County Jail's policy of diverting intoxicated individuals and delaying medical care until they "sober up." Compl. at ¶ 66–67. Therefore, it is the policy in question that is the source of the Eighth Amendment violation, not the conduct of the individuals at the jail, and the question is one of objective deliberate indifference. Based on the pleadings, there was a delay in medical care that resulted from implementing the "sober up" policy that Owen had reason to know could lead to significant Eighth Amendment violations, and it is plausible that Perales' death resulted from that delay. Owen Br. at 8–10. The case

13

survives the Rule 12(b)(6) motion to dismiss based on a lack of an underlying constitutional violation.

### 2. Owen's Liability for Failure to Supervise

A plaintiff seeking to bring a cause of action for supervisory liability must show that there was an "affirmative link" between the supervisor and the constitutional violation. George, 32 F.4th at 1255 (quoting Est. of Booker v. Gomez, 745 F.3d 405, 435 (10th Cir. 2014)). An affirmative link "does not require direct participation because § 1983 'states any official who causes a citizen to be deprived of her constitutional rights can also be held liable.'" Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) (quoting Buck v. City of Albuquerque, 549 F.3d 1269, 1279 (10th Cir. 2008)) (internal quotation and citations omitted). When the affirmative link is not a result of direct participation "the elements for supervisory and municipal liability are the same." Burke ex rel Williams v. Regalado, 935 F.3d 960, 999 (10th Cir. 2019).

Here, the Estate has not alleged facts that are distinct from the policy or failure to train claims. Instead, the claim for failure to supervise does not rely on direct participation, and therefore the elements for this claim are the same as the above municipal liability argument.

Owen contends that failure to supervise staff requires an underlying constitutional violation by an individual officer and cites Crowson v. Washington County Utah. Owen's Br. at 8. But Crowson holds the opposite: that individual action is not required, and that "policies may be unconstitutional precisely because they fail

14

to ensure that any single officer is positioned to prevent the constitutional violation." 983 F.3d at 1191. Therefore, "[w]here the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable." Id. Crowson states that this interpretation both upheld long-standing circuit caselaw and was consistent with Supreme Court jurisprudence. Id. The Estate has sufficiently alleged facts to show an affirmative link as set forth above, therefore this claim survives a Rule 12(b)(6) motion.

### 3. Owen's Lability for Failure to Train

The Estate argues that Washington County did not provide jail staff with adequate training to identify medical emergencies to elevate care for "at-risk arrestees." Compl. at ¶ 76. The Estate claims that Washington County knew that employees would confront situations in which intoxicated arrestees would present objectively serious and life-threatening medical conditions without medical support staff on hand that would require staff to determine when to initiate care. Id. at ¶¶ 76–77.

Owen contends as above that a constitutional violation by an individual officer is required. Owen's Br. at 8. As stated above, this court disagrees. Owen also argues that the Estate does not allege sufficient facts to plausibly claim that the "sober up" policy directly caused Perales's death. Reply at 10–11. The issue before the court is whether causation for a failure to train claim under § 1983 is facially plausible.

15

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). To satisfy § 1983, a municipality's failure to train must be relevant to the cause of the injury and must amount to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (citing Canton, 489 U.S. at 388) (internal brackets omitted). As stated above, municipal deliberate indifference liability ordinarily requires a pattern of similar constitutional violations by untrained employees. Id. at 62 (citing Brown, 520 U.S. at 409).

The Estate asserts that Washington County Jail has a single nurse as on-staff medical support, and that when the nurse is not at work, no other medical staff are present at the jail. Compl. at ¶¶ 16–17. The Estate contends "upon information and belief" that Washington County has not implemented any medication assisted treatment program to mitigate the risk of substance abuse disorders or withdrawal, or trained its staff to recognize substance abuse disorders or withdrawal symptoms in others. Id. at ¶¶ 18–20. The Estate argues that Washington County does not provide adequate training for staff to know when to refer a person for medical care. Id. at ¶ 55. No training was implemented despite two specific incidents involving deaths of persons who were denied medical screening as a result of the "sober up" policy. Id. at ¶¶ 20–22.

The Estate asserts that records show that at the time Perales arrived at the Washington County Jail, Perales was exhibiting significant signs of intoxication and withdrawal symptoms and started exhibiting signs of cardiac distress while in

16

the holding cell. Compl. at ¶ 49. The Estate argues that as a result of the "sober up" policy, no jailers provided medical care until a staff member noticed Perales was "no longer making any noises." Compl. at ¶¶ 40; 46–51. After this, Perales was found "with a liquid substance around [his] head" and Nurse Breton began "life saving measures." Compl. at ¶¶ 56–57.

The issues the complaint alleges are more than "threadbare recitals of a cause of action." Twombly, 55 U.S. at 663. While many of the municipal training allegations are made on the Estate's "information and belief," there is considerable difficulty in providing more specific facts as to lack of training at this stage of litigation. The Estate does rely on records that show that Perales was not given medical treatment by staff and that staff did not alert the nurse that Perales was in distress until after Perales was silent for nearly two minutes. Following basic logic, the allegation meets the requirements to survive a motion to dismiss under Rule 12(b)(6).

### B. Breton's Motion to Dismiss

Nurse Sonia Breton filed a motion to dismiss the § 1983 claim filed against her in her individual capacity for medical care. Breton argues that the facts in the complaint fail to show 1) that Breton "personally interacted with Perales," 2) that Breton was involved with any alleged failure of medical care, and 3) that Perales displayed symptoms of a serious medical emergency that would have been obvious to a lay person.[4] Breton Br. at 4–6.

---

[4] The Estate contends that Nurse Breton should be held to a medical professional level of liability. Pl. Resp. to Breton at 6. The court need not address the varying standards at this time.

17

The Estate claims deliberate indifference of medical care against "Jailers" and Breton in their individual capacities. Compl. at ¶¶ 68–71. The Estate claims that based on Perales's presentation of symptoms and existing medical records, "Jailers and Breton" had actual knowledge that Perales suffered from objectively serious medical conditions that required close supervision. Id. at ¶ 70. The Estate alleges upon information and belief that Wathen communicated his on-scene observations of Perales to Jailers and Breton, though the Estate is not sure whether the existence of the hypertension medication was communicated at that time. Id. at ¶¶ 41–42. The Estate alleges that after Durham observed that Perales had been silent for over two minutes and found with liquid around his head, Breton responded and started life saving measures. Compl. at ¶¶ 51; 53; 56; 57.[5] The Estate further contends that whether Breton failed to appreciate the significance of Perales's symptoms is a question of fact, not a matter for a Rule 12(b)(6) motion. Pl. Resp. to Breton at 8–9.

A claim of deliberate indifference of medical care by individuals requires an objective and subjective component. Oxendine, 241 F.3d at 1276. A court must determine "both whether the deprivation is sufficiently serious and whether the government official acted with a sufficiently culpable state of mind." Id. A culpable state of mind requires that the official knew the inmate "faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'"

---

[5] In its response, the Estate contends that Perales demonstrated obvious and observable symptoms consistent with withdrawal and immediate risk of harm "in full view" of Nurse Breton. Pl. Resp. to Breton at 8. The relevant paragraph in the complaint, however, fails to mention Breton. Compl. at ¶ 40. Therefore, the court need not consider this argument.

Id. (citing Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)). The Tenth Circuit has applied joint and severable liability for injuries that cannot be apportioned to § 1983 claims. Northington v. Marin, 102 F.3d 1564, 1569 (10th Cir. 1996).

Here, the question is whether Breton can plausibly be jointly and severally liable for an Eighth Amendment violation against Perales. She cannot. The complaint, as pled, does not allege sufficient facts to show that Breton met Perales, only that she had learned something about his condition from Wathen. It is not clear when Breton left the Washington County Jail, or when she arrived the next day. Breton did come to the scene and attempt life-saving measures. While joint and severable liability may be possible, it is not plausible under the facts alleged. The motion to dismiss is granted without prejudice.

The Estate asks for leave to amend the complaint against Breton or grant an order for pre-answer discovery limited to the production of the video depicting Perales during his detention and copies of any post-incident investigation into his death, subject to the court's standardized protective order. Pl. Resp. to Breton at 11. Pre-answer discovery will provide the most efficient path to a final disposition; therefore, in the interests of the parties' convenience and the administration of justice, an order for pre-answer discovery limited to these requests is granted. See Fed. R. Civ. P. 26(d)(3).

### C. Remaining Claims

None of the jailers named in the complaint, nor James Wathen, have entered an appearance in this matter. The court will not sua sponte dismiss the action

against them at this time, even though the complaint appears deficient as to their individual liabilities. If video or reports provide further insight as to the actions of the jailers, any amended complaint should reflect the evidence to strengthen plausibility of the claims.

## IV. Conclusion

Defendant Sherriff Owen's Motion to Dismiss is **DENIED**; Defendant Sonia Breton's Motion to Dismiss is **GRANTED**. Claims against Breton are **DISMISSED** without prejudice and further, the Estate's request for pre-answer discovery limited to the production of the video depicting the decedent during his detention and copies of any post-incident investigation into his death, subject to the court's standardized protective order is **GRANTED**. If plaintiff does not amend its complaint against Sonia Breton within sixty days hereof, judgment dismissing such action with prejudice will be entered.

/s/ Jane A. Restani
Jane A. Restani, Judge

Date: May 25, 2023
New York, New York