# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  JEFF TREVILLION, as Special Administrator for the Estate of Louis Perales, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>(2)  SCOTT OWEN, in his individual and official capacity as Sheriff Washington County, Okla.; and<br>(3)  JAMES WATHEN, III,<br>(4)  JOSHUA DURHAM,<br>(5)  ANDREW GALANIS,<br>(6)  DAVID KERR,<br>(7)  ETHAN DONOVAN,<br>(8)  JORDAN INMAN,<br>(9)  MICHAEL HOPPER,<br>(10) MICHAEL KITCHENS,<br>(11) RANDY MORGAN,<br>(12) SETH O'NEAL,<br>(13) AARON WITT,<br>(14) BRANDI UNDERWOOD,<br>(15) COLTON TATTERSHALL,<br>(16) JOSEPH RAMERIZ, and<br>(17) REED BLACKARD,<br>all in their individual capacities,<br><br>    Defendants. | Case No.: 4:22-cv-00473-JAR-MTS |

## OPINION AND ORDER

Jane A. Restani, Judge[*]:

Before the court is the motion of defendant Scott Owen ("Owen") to exclude the testimony of Michael Jobin, M.D. ("Dr. Jobin"), an expert witness called by plaintiff Jeff Trevillion ("the Estate"). See Def.'s Mot. to Exclude Test. of Dr. Michael Jobin, ECF No. 89 (July 31, 2025) ("Def.'s Mot."). Owen argues that under Federal Rule of Evidence 702 ("Rule 702"), Dr. Jobin's testimony should be excluded because Dr. Jobin is unqualified as an expert, his testimony is unreliable, and his opinions are legal in nature. Id. at 1. The Estate responds that Dr. Jobin is a qualified expert because he is a board-certified emergency room physician who has provided medical clearances for patients in law enforcement custody throughout his career. See Pl.'s Resp. in Opp. to Mot. to Exclude Test. of Dr. Michael Jobin at 1–2, ECF No. 98 (Aug. 28, 2025) ("Pl.'s Resp."). The Estate also contends that Dr. Jobin's opinions are factually supported, sufficiently reliable, and limited to non-legal concepts. See id. at 5, 8–9.

For the following reasons, the court grants in part and denies in part defendant's motion.

I. **Factual Background**

The court assumes the parties' familiarity with the facts of the case. The Estate asserts a 42 U.S.C. § 1983 claim against the arresting officer, the jail staff,

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

2

and Sheriff Scott Owen in his official capacity (collectively "defendants"). Compl. at 1, 11–15, ECF No. 2 (Oct. 25, 2022) ("Compl."). The Estate alleges that defendants' policy of placing intoxicated inmates into holding cells until they "sober[ed] up" constituted a deliberate indifference to Louis Perales' ("Perales") serious medical needs. Id. at 11–14. The Estate further alleges that defendants' failure to adequately train or supervise employees violated Perales' constitutional rights. Id. at 13. On November 3, 2020, police officers arrested Perales on an outstanding warrant and brought him to Washington County Jail ("the jail") after EMS "cleared" him of "any immediate medical issues." Id. at 5–6. Perales was placed in a holding cell that afternoon. Id. at 9. On the morning of November 4, 2020, Perales was found unresponsive in the cell. See id. He was transported to a hospital and pronounced dead. Id. at 10. The hospital determined his cause of death to be atherosclerotic cardiovascular disease exacerbated by methamphetamine. Id.

**II.    Standard of Review**

When determining expert admissibility, courts consider (1) whether the expert is qualified to render the opinion and (2) whether the expert's opinions are reliable. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2009) (citing Fed. R. Evid. 702; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). The expert must be qualified, and his or her opinion must be reliable, but the opinion need not be scientifically correct or exhaustive. See Daubert, 509 U.S. at 597; Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The court has broad discretion to admit or exclude expert testimony under Rule 702. See United States

v. Velarde, 214 F.3d 1204, 1208 (10th Cir. 2000) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999)). Moreover, the court serves a gatekeeping function regarding expert witness testimony. See Velarde, 214 F.3d at 1208. The court's gatekeeping function, however, is not a substitute for rigorous cross-examination, wherein any of the opponent's objections may be brought against admissible evidence. See Daubert, 509 U.S. at 596.

### III. Discussion

#### A. Dr. Jobin is qualified to testify as an expert

Owen argues that Dr. Jobin is not qualified to testify as an expert about either Perales' medical needs or the jail staff's actions and policies regarding intoxicated inmates because Dr. Jobin has no specialized training in cardiovascular diseases or drug intoxication and has never worked in a jail or provided medical care in a jail setting. See Def.'s Mot. at 1, 6. The Estate responds that Dr. Jobin's employment as an emergency medicine board-certified physician and other experience qualifies him to testify on these issues. See Pl.'s Resp. at 2–3. The Estate asserts that Dr. Jobin's experience included providing medical clearances for arrestees in a similar fashion to how the jail medically clears arrestees. See id. at 3.

The Tenth Circuit has held that "[a]s long as an expert stays within the reasonable confines of his subject area . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." Ralston, 275 F.3d at 970 (quoting Compton v. Subaru of Am., Inc., 82 F.3d 1513, 1520 (10th Cir. 1996) (citation modified)). An expert need not satisfy an overly narrow test of his or her own

4

qualifications. See Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974). A medical degree alone is insufficient to permit a physician to testify concerning any medical related issue, see Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1310, 1315 (N.D. Okla. 2000), but an expert may opine within the scope of his or her established expertise and generally need not be specialized in the precise issue at hand. See Cook v. Rockwell Int'l. Corp., 580 F. Supp. 2d 1071, 1084 (D. Colo. 2006) (citing Ralston, 275 F.3d at 970).

    Dr. Jobin has been employed as a board-certified emergency room physician throughout his career, during which he has evaluated intoxicated patients and provided medical clearance examinations for patients in law enforcement custody.[1] See Pl.'s Resp. at 2. In that role, Dr. Jobin regularly decided whether arrestees who were intoxicated with alcohol or other drugs were fit for incarceration. See Excerpt from Dep. of Michael Jobin, M.D. at 39:6–40:17, ECF No. 89-2 (July 31, 2025) ("Dr. Jobin Dep."). During his career, Dr. Jobin served in a role on the Colorado Board of Medical Examiners where he reviewed complaints made by prisoners about the medical care they received while in prison. See id. at 69:23–71:20. Dr. Jobin has previously served as an expert witness in cases in which he testified about inmates and medical care. See id. at 47:13–24. In those instances, he was asked to review the basic emergency care policies of jail facilities, which he evaluated relative to the jail's medical capabilities. See id. at 52:1–18. In this case, he intends to offer his

---

[1] Owen concedes that Dr. Jobin has this experience, instead arguing that this experience is not sufficient to render him qualified. See Def.'s Mot. at 6–7.

5

opinion that adequate medical evaluation procedures and emergency medical treatment for acute intoxication would have prevented Perales' death by ensuring he was treated and monitored in a hospital. See Expert Rep. of Michael J. Jobin, M.D., F.A.C.E.P. at 5–6, ECF No. 89-3 (July 31, 2024) ("Dr. Jobin Expert Rep.").

    Dr. Jobin's opinions are within the "reasonable confines of his subject area" of emergency medicine. See Ralston, 2275 F.3d at 970 (citation omitted). His experience as an emergency room physician means that he is familiar with standard emergency medicine procedures and how to treat common conditions. Even if Dr. Jobin is not an expert in cardiology or drug intoxication specifically, he has made assessments about whether arrestees are fit for incarceration or need medical treatment outside of the place of incarceration. This necessarily involves assessing whether an arrestee's medical condition will become dangerous if not treated in an acute care setting. See Dr. Jobin Expert Rep. at 5–6. Any lack of further specialization affects only the potential weight the factfinder will give to the evidence and not its admissibility. See Ralston, 275 F.3d at 970 (citation omitted); Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991). Accordingly, Dr. Jobin is qualified to opine on the quality of the medical care and procedures offered by the jail to Perales.

    Further, while Dr. Jobin has not worked in a jail and is not trained regarding jail policies, his proposed testimony covers only whether the jail's policies followed "normal medical practice" for an emergency setting, one which he compares to a "low level emergency department." See Dr. Jobin Dep. at 52:7–15. Dr. Jobin's testimony

on the jail's policies is limited to his opinions about proper emergency medical policies and practices. See Dr. Jobin Expert Rep. at 5–6. Dr. Jobin's opinion on these issues is within the reasonable confines of his forty-five years of expertise in emergency medicine, including working as an emergency medicine professor and physician in multiple hospitals' emergency departments and evaluating the medical needs of arrestees. See Curriculum Vitae of Michael J. Jobin, M.D., F.A.C.E.P. at 4–5, ECF No. 89-1 (July 31, 2025); Dr. Jobin Dep. at 39:6–40:17. Any potential lack of further specialization or experience may be addressed on cross-examination. See Daubert, 509 U.S. at 596. At this juncture, the court concludes that Dr. Jobin is qualified to testify as an expert on Perales' medical needs and policies approved by, and actions taken by, the jail staff regarding intoxicated inmates, such as Perales.

### B. Dr. Jobin's opinions are reliable

Owen argues that the expert opinions Dr. Jobin offers are unreliable because they are not based on sufficient facts or data[2] and because some of the materials that he considered were unreliable. See Def.'s Mot. at 8–9. The Estate responds that Dr. Jobin's opinions are supported by sufficient, reliable evidence.[3] See Pl.'s Resp. at 5.

---

[2] Owen argues that Dr. Jobin failed to consider all the relevant material and thus failed to employ any valid scientific methodology when he did not write a supplemental opinion to his report after being provided with deposition transcripts of additional witnesses. Def.'s Mot. at 8–9. The Estate argues that there is no requirement that Dr. Jobin draft a supplemental opinion based on additional testimony. See Pl.'s Resp. at 6. This additional deposition testimony was likely duplicative of the video of Perales' death already in the record. Accordingly, the Estate demonstrates that it is more likely than not that Dr. Jobin based his testimony on sufficient facts or data in his report and was not required to supplement the report.
[3] Additionally, Owens argues that the court should exclude Dr. Jobin's testimony pursuant to Federal Rule of Evidence 403 ("Rule 403"). Def.'s Mot. at 8–9. The court

7

Expert testimony is reliable when it is based on sufficient facts or data and the expert properly applies reliable methodology to the facts at issue. See Daubert, 509 U.S. at 590–91. The factual basis for an opinion need not result in "absolute certainty" so long as it enables the expert to express a reasonably accurate conclusion. Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995)). An expert's reliance on disputed facts in reaching his or her conclusion does not render the opinion unreliable. See Cook, 580 F. Supp. 2d at 1085; Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Nonetheless, a court may examine the facts upon which the expert relied and determine whether the "analytical gap" between those facts and the opinion offered is too great to be reliable. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Dr. Jobin reviewed the following facts to reach his opinion: Perales' medical records, which included the Oklahoma State Bureau of Investigation report, ambulance records, and autopsy report; Perales' jail records; the jail's general policies; the jail's policies relating to Perales; the police body camera footage from

---

may exclude testimony under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court may exclude expert testimony offered on an issue that a jury can assess for itself because it would not "even marginally assist the trier of fact." See Thompson v. State Farm Fire and Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994) (internal quotations omitted). The court is unconvinced. Rule 403 will only exclude evidence when the evidence's value is "substantially" outweighed by the danger of unfair prejudice or another similar consideration, or when the evidence would be of no use to the jury. That is a high bar, and it is not met here. Dr. Jobin's testimony goes to relevant factual issues, and likely will assist the jury.

Perales' arrest showing the EMTs attempting to take Perales' blood pressure; the officers' deposition testimony that Perales was cleared in the field for transport to the jail but without formal paperwork; and the jail video showing Perales flailing his arms in the holding cell. See Dr. Jobin Expert Rep. at 1–5. From these materials, Dr. Jobin concluded that adequate emergency medical care and procedures likely would have prevented Perales' death. See id. at 2, 6.

The court is persuaded that the facts that Dr. Jobin examined to develop his expert opinion are sufficient, even if not exhaustive. See Lieberenz v. Bd. of Cnty. Comm'rs of the Cty. Of Saguache, Colorado, No. 21-cv-00628-NYW-NRN, 2025 WL 35601, at *13 (D. Colo. Jan. 6, 2025). Dr. Jobin relied on his decades of experience in emergency medicine in assessing whether the facts showed that adequate procedures were in place to care for Perales. The court concludes that Dr. Jobin's testimony is based on sufficient facts and data and is the product of reliable methods properly applied to the facts at issue.[4]

### C.  Dr. Jobin may not render legal opinions

Owen argues that Dr. Jobin's statement in his deposition that Mr. Perales' death was caused by "deliberate indifference" is a legal opinion that Dr. Jobin is not

---

[4] Additionally, Dr. Jobin concluded that the jail was not properly responsive in providing video records to those who request them. See Dr. Jobin Expert Rep. at 6. These portions of Dr. Jobin's testimony should be excluded. The opinion as to the jail's response to record requests should be excluded because it would not be helpful to the trier of fact here. See Daubert, 509 U.S. at 591. It is not relevant to the claims brought in this case.

qualified to offer.⁵  See Def.'s Mot. at 11.  The Estate responds that defense counsel brought up the phrase "deliberate indifference" during Dr. Jobin's testimony and that Dr. Jobin did not use the phrase himself in his report.  See Pl.'s Resp. at 8.

An expert generally may not state his or her opinion as to any legal standards nor state any legal conclusions drawn when applying the law to the facts.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) (internal citation omitted).  While the expert may, under Rule 704, testify as to an ultimate issue of fact, he or she may not testify on questions of law because it is the court's job to instruct the jury on the proper legal standard.  See Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007).

During his deposition, Dr. Jobin testified that he thought there was "deliberate indifference" in the jail's actions in this case because the jail staff did not show proper regard to Perales' well-being.  See Dr. Jobin Dep. at 34:3–13.  When defense counsel asked Dr. Jobin about this phrase during Dr. Jobin's deposition, Dr. Jobin responded that he did not know an exact legal definition of "deliberate indifference," and that he learned this phrase from another case in which he served as an expert.  See id. at 34:19–36:1.

"Deliberate indifference" is an ultimate issue of law in this case and use by a witness would likely confuse the jury as to its role.  Dr. Jobin may not offer testimony as to whether the defendants' actions constituted "deliberate indifference."  Many

---

⁵ Each of the five claims brought by the Estate involve claims of "deliberate indifference."  See Compl. at 11–14.

10

different formulations are available to express the ultimate factual issue. Accordingly, Dr. Jobin is limited from using the phrase "deliberate indifference" in his testimony.

## IV. Conclusion

The defendant Scott Owens' motion to exclude the expert testimony of witness Dr. Jobin, ECF No. 89, is **GRANTED** in part and **DENIED** in part.

/s/ Jane A. Restani
Jane A. Restani, Judge

Date: October 10, 2025
New York, New York